UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **REBECCA MASEVICE,** | ) | CASE NO. 1:22CV223 |
| | ) | |
| Plaintiff, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| **LIFE INSURANCE COMPANY** | ) | |
| **OF NORTH AMERICA,** | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, SR. J.**:

This matter comes before the Court upon the Motion (ECF DKT #16) of Plaintiff Rebecca Masevice for Judgment on the Administrative Record and the Motion (ECF DKT #17) of Defendant Life Insurance Company of North America ("LINA") for Judgment on the Administrative Record. For the following reasons, both Motions are denied and the case is remanded to the LINA Plan Administrator for additional fact-finding.

**I. BACKGROUND SUMMARY**

On February 8, 2022, Plaintiff filed a Complaint pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132 *et seq.*, claiming that Defendant wrongfully terminated her long-term disability benefits ("LTD").

On March 15, 2015, Plaintiff was hired as a marketing manager for Accenture, LLP. Plaintiff was a covered participant as a sponsored employee through the LTD Policy administered and underwritten by Defendant. Plaintiff had a history of migraine headaches which intensified in 2017. She began to suffer cluster headaches in 2017 also. Plaintiff was diagnosed with postural orthostatic tachycardia syndrome (POTS), dizziness, fatigue, shortness of breath and brain fog. Plaintiff last worked on January 31, 2018. Long-term disability payments were approved by Defendant on October 3, 2018, with benefits commencing effective July 31, 2018. Defendant's Policy required continued proof of the employee's disability in order for benefits to continue.

On February 19, 2020, Defendant informed Plaintiff that it was beginning an evaluation of whether she would continue to qualify as disabled under the new definition of disability effective on July 31, 2020.

> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
> 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
> 2. unable to earn 80% or more of his or her Indexed Earnings.
>
> The Insurance Company will require proof of earnings and continued Disability.

Defendant advised Plaintiff that an Independent Medical Examination (IME) would be necessary to establish continuing disability. An IME was first scheduled for June 2, 2020. Plaintiff requested the examination be conducted by "telemed;" but Defendant confirmed that method was not available. Defendant pushed back the date to allow review of recently-received medical records. The IME was rescheduled for June 29, 2020. Since Plaintiff's current functionality was not clear to Defendant through her records, the IME remained

necessary; however, neither "telemed" nor "virtual" was an option. The IME was rescheduled again at Plaintiff's counsel's request; but Plaintiff was reminded of Defendant's right to examine her and of the risk to Plaintiff of termination of benefits for failure to cooperate. The IME was re-set for July 29, 2020. Plaintiff's counsel requested once again that it be conducted virtually. Defendant determined that an in-person examination was necessary since Plaintiff's own treating providers had not seen her in person since September of 2019. Unfortunately, Plaintiff reported that she had COVID-19 symptoms of a sore throat, dry cough and shortness of breath. Defendant cancelled the July 29, 2020 appointment.

Without completion of the IME due to Plaintiff's refusal to attend and after completing the review of her claim, Defendant informed Plaintiff that it was unable to continue paying LTD benefits beyond July 31, 2020. (See Defendant's letters of August 13, 2020 and October 28, 2020; ECF DKT #14-6 at 195, et seq. and #14-6 at 223).

Plaintiff acknowledges that Defendant scheduled yet another IME in October of 2020. However, since her benefits had already been terminated, her claim was already closed and Defendant gave no assurances that benefits would be reinstated in the interim, Plaintiff did not appear. (Plaintiff's Opposition, ECF DKT #20 at 5).

Pursuing an internal appeal, Plaintiff noted the "extraordinary circumstances of the COVID-19 pandemic" and disputed that she failed to cooperate with respect to scheduling an IME. Plaintiff's concerns about attending the IME in person were valid, given her symptoms and her compromised immune system. In her written appeal, Plaintiff offered updated records from the Cleveland Clinic; updated letters/reports from her treating physician, Dr. Alla Kirsch; the June 10, 2019 Functional Capacity Examination (FCE) performed by Michael

Millicia, a physical therapist; a list of medications; and a vocational report from Ms. Kate Reis.

According to the June 10, 2019 FCE, Plaintiff was found to be unable to work full time.  She needed to alternate sitting and standing.  She was unable to walk occasionally, stand for an hour and forty-five minutes, or sit for five hours.  She had only occasional tolerance for firm grasping, gross coordination and repetitive kneeling and required frequent rest breaks.  (ECF DKT #14-6 at 1063).

Dr. Kirsch provided three reports:  On May 12, 2020, Dr. Kirsch deferred to neurology and cardiology specialists for any of Plaintiff's restrictions or limitations.  Dr. Kirsch indicated that she had not seen Plaintiff in person since September of 2019.  (ECF DKT #14-6 1068).  After a virtual visit on May 20, 2020, Dr. Kirsch noted severe restrictions as to standing and walking.  (ECF DKT #14-6 at 1078-1080).   In a further update, Dr. Kirsch added that "[Plaintiff] is totally disabled physically & cognitively due to only intermittent very short-lived bursts of improved function."  (ECF DKT #14-6 at 1086-1090).

Plaintiff consulted Kate Reis, a vocational expert.  According to Plaintiff's summary in her written appeal paperwork, Ms. Reis concluded that Plaintiff cannot use any of the skills she acquired in the marketing field and is not capable of even part-time work due to the severity of her symptoms.  (ECF DKT #14-6 at 238-239).

Defendant referred Plaintiff's entire record to its own neurological and occupational experts for review.  As a Manager of Marketing Services, Plaintiff's occupation required sedentary demand activities according to the Dictionary of Occupational Titles.  The definition of "sedentary" encompasses:

> Exerting up to 10 pounds of force occasionally or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are Sedentary if walking and standing are required only occasionally and all other Sedentary criteria are met.

Defendant's board-certified neurologist opined that Plaintiff's neurologic examinations showed no abnormalities and imaging showed no significant neurologic abnormalities. Plaintiff had no limitations from a neurologic perspective from migraines. She required restrictions and limitations for the POTS syndrome due to lightheadedness and risk of falls with injury. She was restricted from working at unprotected heights, working near open fire/water, operating heavy machinery, moving on a ladder. She was limited to lifting twenty-five pounds frequently. She was able to work eight hours per day and forty hours per week.

Defendant's board-certified expert in Occupational Medicine opined that Plaintiff showed a very mild case of POTS. Repeated dehydration, reported hypoglycemia and the very low body mass index (BMI) provided more likely causes of the persistent symptoms. Nevertheless, Plaintiff's complaints continued and she was at risk for injury if physical restrictions were not in place until the conditions resolved or stabilized. Remaining conditions identified in the medical record were non-limiting since they had resolved, remained relatively constant, or had never risen to a level sufficient to cause functional limitations or require physical restrictions. In conclusion, Plaintiff could sustain functional activity eight hours per day, forty hours per week if she adhered to the restrictions noted.

At Defendant's request, a certified vocational rehabilitation counselor determined that

the occupations of Department Manager and Program Manager (both sedentary) exist that Plaintiff could perform based on the above restrictions and for which Plaintiff would reasonably be qualified based on education, training and experience.

On July 6, 2021, Defendant denied Plaintiff's appeal in a letter to her counsel:

> The policy provides that Life Insurance Company of North America would pay benefits only if your client met the policy's requirements, including the definition of Disability. Disability is determined by medically supported limitations and restrictions which would preclude your client from performing the material duties of any occupation. We do not dispute your client may have been somewhat limited or restricted due to her subsequent diagnoses and treatment; however, an explanation of her functionality and how her functional capacity continuously prevented her from performing the material duties of any occupation from August 1, 2020 through the present and beyond was not clinically supported. The presence of a condition, diagnosis or treatment does not necessarily equate to a presence of a disabling condition or decreased level of functionality. As such, we are affirming our previous decision of August 13, 2020 within the meaning and terms of your client's group Long Term Disability policy. (ECF DKT #14-6 at 427).

The instant administrative appeal followed. Plaintiff and Defendant filed Cross-Motions for Judgment on the Administrative Record and Cross-Responses.

## II. LAW AND ANALYSIS

**Standard of Review**

A claim under 29 U.S.C. § 1132(a)(1)(B) for denial of benefits is to be reviewed "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the administrator or fiduciary is afforded discretion by the plan, the decision is reviewed under the arbitrary and capricious standard. *Evans v. Unum Provident Corp.*, 434 F.3d 866, 875 (6th

Cir. 2006).

In this case, the LINA Insurance Policy was issued in Illinois and the Policy contains a choice-of-law provision. Illinois insurance law prohibits reserving discretion to the insurer. Defendant recognizes this contractual restriction and stipulates to *de novo* review.

Under 29 U.S.C. § 1132(a)(1)(B), a court's review is limited to the administrative record as it existed when the plan administrator made its final decision. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378–79 (6th Cir. 2005).

The court shall take a "fresh look" at the administrative record, [] giving proper weight to each expert's opinion in accordance with supporting medical tests and underlying objective findings, and "accord[ing] no deference or presumption of correctness" to the decisions of the plan administrator. *See Hoover v. Provident Life & Acc. Ins. Co.*, 290 F.3d 801, 809 (6th Cir. 2002).

To succeed in her claim for long-term disability benefits under ERISA, Plaintiff must "prove by a preponderance of the evidence that [she] is "disabled," as that term is defined in the Plan." *Javery v. Lucent Technologies, Inc. Long Term Disability Plan*, 741 F.3d 686, 700-701 (6th Cir. 2014). As a general rule, to establish by a preponderance of the evidence means to prove that something is more likely so than not so.

For its review of Plaintiff's ERISA appeal, the Court has taken a "fresh look" at the Administrative Record and has given proper weight to each expert's opinion with supporting medical tests and objective findings.

In Plaintiff's 2019 Functional Capacity Examination (FCE), her physical therapist found that Plaintiff's disability prevented her from engaging in full-time work. Plaintiff's

treating physician, Dr. Kirsch, concluded in a May of 2020 virtual visit that Plaintiff suffered severe walking and standing restrictions; and Dr. Kirsch ultimately determined that Plaintiff was totally disabled, both cognitively and physically. Upon review of Plaintiff's medical records, Plaintiff's vocational expert, Ms. Reis, found that Plaintiff was incapable of even part-time work in the occupation for which she is, or may reasonably become, qualified based on education, training or experience.

For its part, Defendant noted that Plaintiff's occupation as marketing manager was sedentary. Defendant's neurology expert discerned no abnormalities in the imaging or testing Plaintiff underwent. Plaintiff's POTS symptoms restricted her ability to work from heights or to climb; but Plaintiff could work a full day in a sedentary occupation like her position with Accenture, LLP. Likewise, Defendant's expert in Occupational Medicine concluded that Plaintiff could work forty hours a week, with reasonable restrictions. Throughout this disability review process, Defendant encouraged Plaintiff to undergo an Independent Medical Examination (IME). Without the IME, Defendant was unable to fully understand Plaintiff's current functionality. In the absence of an in-person IME, assessing the extent of Plaintiff's limitations and need for restrictions was "not achievable." Plaintiff continually requested a virtual IME, which Defendant insisted was not an option. For a variety of reasons, in-person IME's on June 2, 2020, June 29, 2020, July 29, 2020 and October 2020 never went forward.

The Court finds that Plaintiff has not proven by a preponderance of the evidence that she is clearly entitled to disability benefits. The Court is not a medical specialist and the disability determination is not the Court's to make. See *Elliott v. Metropolitan Life Ins. Co.*, 473 F.3d 613, 622 (6th Cir. 2006).

A remand to the Plan Administrator is appropriate in an ERISA case where the problem is with the Plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled. ERISA, 29 U.S.C.A. § 1001 *et seq*. "[T]he district court's standard of review and authority to remand are legally and analytically distinct, and, even under *de novo* review, remand is the appropriate remedial measure where further fact-finding is necessary to determine claimant eligibility for benefits. See *Williams v. Int'l Paper Co.*, 227 F.3d 706, 715 (6th Cir.2000) (recognizing that remand is proper where there are factual determinations that need to be made to determine whether a participant is entitled to benefits). *Javery*, 741 F.3d at 699-700.

In this instance, because Dr. Kirsch's treatment notes do not explain the divergent conclusions — from deferring to neurology and cardiology specialists for a limitations/restrictions determination to finding total disability — all within days of each other in May, 2020; because Plaintiff's only FCE is from 2019; because Plaintiff participated in no in-person examinations with Dr. Kirsch since September of 2019; and because Plaintiff did not attend an IME, while Defendant considered that a crucial component of a functionality assessment, there simply is not sufficient evidence in the record to support an outright award to Plaintiff of LTD benefits.

The Court is compelled to say that the problems with the Plan Administrator's decisional process is not of Defendant's own making. That is, the Court recognizes the unique circumstances which the COVID-19 pandemic and quarantine posed for Ohio and the country as a whole. There were necessarily fewer in-person doctor visits; and patients, like Plaintiff, with compromised health, had legitimate fears and concerns about attending face-to-

face consultations.

The Court has the discretion to remand this matter to the Plan Administrator for necessary fact-finding to determine Plaintiff's eligibility for benefits. On remand, Plaintiff shall be given the opportunity to submit additional, current medical evidence from relevant treatment providers and Defendant may require that Plaintiff undergo an in-person IME, now that the COVD-19 crisis has been alleviated. Defendant shall then examine Plaintiff's complete file, renew its decision-making process and clearly explain the reasons underlying its ultimate benefits decision.

### III. CONCLUSION

Accordingly, the Motion (ECF DKT #16) of Plaintiff Rebecca Masevice for Judgment on the Administrative Record and the Motion (ECF DKT #17) of Defendant Life Insurance Company of North America ("LINA") for Judgment on the Administrative Record are denied The case is remanded to the LINA Plan Administrator for proceedings in compliance with this Order.

**IT IS SO ORDERED.**

**DATE: March 16, 2023**

                                         s/Christopher A. Boyko
                                         **CHRISTOPHER A. BOYKO**
                                         **Senior United States District Judge**